Hon. Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square Courtroom 619
New York, NY 10007

August 30, 2022

**Re:** *Brook v. Ruotolo, et al.*, 1:22 Civ.6173 (ER) (S.D.N.Y.)

Your Honor:

I write in accordance with your individual practice rules, §2(A)(ii), in response to Matthew Reynolds' letter (Dkt.7 on 8-24-22) for a pre-motion conference on his proposed motion-to-dismiss for defendants Karl Huth and Huth, Reynolds, LLP ("HR LLP"), where Mr. Reynolds is also a partner. For that reason, Mr. Reynolds has personal financial liability in this action and to that extent is appearing *pro se*.

I am still in the process of serving defendants. Judicial economy may favor completion of service on those defendants who can be served before a pre-motion conference, in the event there are other pre-motion requests.

Reynolds attacks me *ad hominem* by the conclusory statement that I have "embarked on a barrage of meritless and vexatious litigation" in the state court, listing appeals that he concludes I have "lost," without discussion. The state courts never ruled on the claims in this federal action, including the §1983 claims that defendants, through their in-court and out-of-court actions pleaded in the Complaint, engaged in a corrupt conspiracy with the guardianship judge, thereby violating my late mother's and my federal constitutional rights under color of law. Thus, this case is not to "relitigate the State Court Action" as claimed.

In the first state court appeal, conducted by my then appellate counsel Rachel Schulman, I appealed the devastating January 3, 2020 Order finding that my mother Judith Brook was incapacitated and required a guardian, and that I, as healthcare-proxy and power-of-attorney, had purportedly "breached [my] fiduciary duty" to my own mother.

The January 3 Order was signed after a hearing conducted without my mother's presence. The hearing was conducted less than 24 hours after defendant Salzman's 67-page "court-evaluator's" report was served upon my then guardianship counsel James Kaplan. Kaplan needed time to assemble evidence and witnesses, and prepare with witnesses, to rebut Salzman's court-evaluator report. Kaplan requested an adjournment, but the guardianship judge denied Kaplan's request, and proceeded with the hearing notwithstanding my mother's absence—even though my mother, who had been discharged from the hospital on January 2, stated on a recording made at 8 AM on January 3 that she wanted the hearing postponed so that she could be present (Complaint ¶12, 379, 395, 409, 411, 418, 420, 427, 442, 665, 687). The Complaint alleges that the guardianship court hearings were conducted with egregious due process violations engineered by the co-conspirator defendants to achieve their desired end of a finding of incompetence, so that they could loot my mother's $8-million in assets.

My mother died 71 days after the January 3 Order took her healthcare management away from me, a Board-Certified cardiothoracic surgeon, and appointed in my place disgraced ex-cop Joseph Ruotolo (defendant here), who dumped my mother in the Mary Manning Walsh Nursing Home ("MMW", also a defendant here), which resulted in her premature demise due to malpractice.[1] For the temporary guardianship lasting 71 days, the attorneys in the guardianship proceeding have filed claims for $873,774 in fees and compensation.[2] *See* Complaint ¶267.

Rather than address the merits of the January 3 Order, on March 4, 2021 the Appellate Division ("A.D.") dismissed the appeal of the January 3 Order as "moot" because my mother had died on March 15, 2020. The A.D. "resolved" all the issues in the thousands of pages of guardianship proceedings and disastrous results in four sentences. *See Matter of Muser*, 192 A.D.3d 429 (1st Dept. 2021) ("Her death rendered this appeal, which concerns the appointment of a guardian of her person and property, moot").

---

[1] The Complaint alleges that MMW's care was substandard and Ruotolo failed to respond to multiple reports of same. (¶508–516) After Ruotolo's appointment I discovered that the NYPD had punished Ruotolo repeatedly for excessive use of force, a fact he concealed in applications to become a member of the New York bar and a "fiduciary" in New York Supreme Court. (Complaint ¶27–28)

[2] The bulk of these claims are by the named defendant attorneys. The dollar claims continue to increase as these attorneys and a newly assigned "fees-referee" continue litigation for "fees on fees" and "fees on fees on fees".

The A.D. also refused to consider the simultaneous adverse ruling in the January 3 Order, removing my long-standing successful appointment as my mother's fiduciary and healthcare-proxy, with this sentence: "Appellant argues that the adverse finding concerning his handling of the AIP′s affairs will affect him in the future, but he fails to indicate how he will be adversely affected." (*Id.*)

Once the A.D. committed to this outcome, that it would not review the appointment and disastrous results, it disposed of my subsequent appeals of other decisions in similar short order.[3]

The instant action is not an attempt to "relitigate" the guardian's appointment or the A.D. decision not to review it at all, but rather to compel defendants to compensate me, my mother's sole surviving son, for the injury caused by defendants' corrupt conspiracy with Guardianship Judge O'Neill-Levy to wrongfully strip my mother of all of her civil and Constitutional rights, and to remove me as her caring fiduciary, by seriatim violations of her and my due process rights, as alleged in the 256-page Complaint, and by their other actions under color of law, such as Ruotolo's dumping my mother against her will in the MMW Nursing Home without authority to do so. The pendent state tort claims seek damages from defendants for other state law claims. Such relief as compensation for damage caused by deprivation of constitutional rights and other tortious conduct could not be sought in the guardianship proceeding, since that proceeding was to determine whether a guardian should be appointed.

*Frierson-Harris v. Hough*, 2006 W.L.298658 dismissed that complaint for the Frierson plaintiff's single, insufficient, conclusory allegation, without factual or evidentiary support. The *Frierson* court agreed that in this Circuit:

> An accusation that private parties conspired with a judge may suffice to support Section 1983 liability against the private parties. *See Dennis v. Sparks,* 449 U.S 24, 28 (1980); *Rounseville v. Zahl,* 13 F.3d 625, 633 (2d Cir.1994). This is true even though the judge is entitled to absolute immunity. *Dennis,* 449 U.S. at 28; *Rounseville,* 13 F.3d at 633.

In the case at bar, the Complaint, supported by the Guardianship record and *post-mortem* fee-hearings, alleges a conspiracy by the named guardianship lawyers and evaluators with the guardianship judge to find my mother "incapacitated" so as to award, from her $8-million estate, millions of dollars in fees and "compensation." The Complaint alleges that when the conspiracy commenced, defendants were in an express or tacit agreement to the common plan to adjudicate my mother "incapacitated". Each defendant had motive to participate in this scheme, and committed wrongful and unconstitutional acts in furtherance of the conspiracy. *See*, *e.g.*, Complaint ¶8–18.

The Complaint alleges that Mr. Huth, HR LLP, and Huth's co-counsel Shainbrown repeatedly and knowingly lied to the Court, the evaluators, and the other attorneys in the guardianship proceeding in emails, verbal communications, and court filings. *See* Complaint ¶84–116, 169–177, 186–189, 202–204, 230–231, 258, 358, 364–372, and 379.

The actions of these defendants and the co-conspirators could not be addressed in state court because the guardianship judge conspired with them to award lucrative fees to her appointees, particularly her favorite guardian, Ruotolo (she appointed him 21 times in 2 calendar-years) (Complaint ¶8, 29, 160). Other attorneys that the guardianship judge corruptly sought to reward, at my mother's and my expense, included: Rosenthal, Wechsler, Mental Hygiene Legal Service, and Barocas (attorneys statutorily required to represent my mother's wishes, but who not only failed to do so, but actively worked against their client's wishes); evaluators Salzman and Crowley; and petitioner's lawyers Huth, HR LLP, Shainbrown, and the Shainbrown Firm. The 256-pages long Complaint recites facts supporting when and how that conspiracy occurred, and egregious due process violations in the proceeding.

The U.S. Supreme Court has held that "the private parties conspiring with the judge were acting under color of state law; and it is of no consequence in this respect that the judge himself is immune from damages."[4]

Alternatively, alleged at Complaint ¶19, if there was no conspiracy with the state court judge in the guardianship proceeding, my mother and I were deprived of our aforesaid federal constitutional rights, including due process, by the attorneys participating in the guardianship proceeding and exercising their "rights" created by state law

---

[3] Reynolds' reference to the New York State "Court of Appeals" is misleading. That court never reached the merits. My request for "leave to appeal" the first A.D. ruling was denied, apparently because there was no procedural ground to hear it from an A.D. decision that was not ruling on the "final order" in the case. *See* CPLR 5601.

[4] *Dennis v. Sparks*, 449 U.S. 24, 28–29 (1980); *see also Rounseville v. Zahl*, 13 F.3d 625, 633 (2d Cir. 1994); *Carvel v. State*, No. 08-4576-cv (2d Cir. Mar. 12, 2010) (summary order remanding dismissal of §1983 claim to assess allegations of "strong appearance" of conspiracy by bribing lower court judge)

(NYMHL Article 81) in their various capacities as Petitioner, Petitioner's counsel, appointed evaluators, appointed counsel, and appointed Guardian of Judith, and "pursuant to rules of conduct imposed by the State". "[T]he procedural scheme created by the statute ... obviously is the product of state action." *Lugar v. Edmondson*, 457 U.S. 922, 941 (1982) The Article 81 proceeding failed to provide due process, failed to establish incapacity by clear-and-convincing evidence, and received and relied on false allegations, evidence and reports from defendants in the case at bar. This was all done to effectuate the involuntary appointment of a guardian for my mother against her clearly expressed wishes, and to vacate all of my previous powers and proxies from my mother. This deprivation of Constitutional rights under color of state law caused my mother to lose all control over her person and property and resulted in her premature death and substantial financial damage to her Estate and to her intended beneficiaries.

Contrary to Reynolds letter p.3, the other claims are amply and plausibly alleged in the Complaint, must be deemed true on a motion-to-dismiss, and therefore require discovery and trial.

As to violation of rights under the New York State Constitution, Reynolds asserts the Complaint does not show how "the Huth Defendants … could be found to be state actors" when that is in fact the legal effect under the above precedents of conspiring with a state court judge.

As to fraudulent billing, the Complaint details and meets FRCP Rule 9(b), namely, that Huth and Shainbrown engaged in extensive billing fraud in their submissions to the state court. *See* Complaint ¶649–651, 699 ("including invoices for services not rendered, invoices for duplicative services"). Huth submitted bills for $202,155.25 to be charged against the funds Ruotolo is holding which would otherwise go to my mother's Estate, and I am my mother's beneficiary and a personal representative of my mother's Estate. Huth's co-counsel Shainbrown has separately submitted bills for $95,863.96 similarly to deprive my mother's beneficiaries. These allegations require discovery and trial.

The claim for unjust enrichment (Complaint ¶703–706) is made based on the above compensation claims by defendants, which by the time of trial are expected to have been awarded in some measure to those defendants, unless they withdraw their claims.

As to violation of Judiciary Law §487 and fraud-on-the-Court, the Complaint extensively documents Huth and Shainbrown's deceitful and collusive conduct and fraud-on-the-Court, with references to the Complaint cited above.

Although, as shown above, there is independent federal jurisdiction under §1983, Reynolds challenges the alternative diversity jurisdiction on the theory that "every cause of action against the Huth Defendants claims harm to Judith Brook and her estate as grounds for recovery." He argues that, under 28 U.S.C. §1332, I, as legal representative of the Estate, shall be deemed a citizen "only of the same State as the decedent" (in this case New York). The argument misapprehends the claims and my entitlement as individual plaintiff. First, the claims are not based solely on harms to Judith's Estate. Rather, the violation of my mother's and my constitutional rights resulted in the wrongful determination of my mother as "incapacitated" which then caused me to lose my mother prematurely ("wrongful death") and damaged me personally as a beneficiary of the assets in her estate being looted by defendants through the guardianship, or in personal injury to me (*e.g.*, intentional infliction of emotional distress). My personal diversity as a Florida citizen is therefore sufficient to recover for those losses, since all the claims (other than wrongful death) are for the reduction of Judith's assets by the guardianship or injury to me as plaintiff. In addition, on the wrongful death claim, as a matter of law, under NYEPTL §1-2.5, and 4-1.1, I, as my mother's only surviving son, am a lawful distributee, entitled to bring a wrongful death claim. *Maerov v. Long Is. Airline*, 2021 N.Y. Slip Op 32689. Regardless, that claim (fourth cause of action) is not against the Huth Defendants.

Reynolds cites *Liu v. Westchester County Medical Center*, 837 F. Supp. 82 (S.D.N.Y. 1993) that the 1988 amendment to the diversity statute was to prevent selection of a decedent's representative out of state for "manipulation and forum shopping" of plaintiff's venue. Here, I was named in my mother's Will as an executor entitled to act as representative of the estate at a time when I was a Connecticut citizen (June 2006). My later move to Florida after my mother's death had nothing to do with "manipulating" venue for what now turns out to be multiple claims arising out of a guardianship carried out in an unconstitutional manner and other wrongs against me.

In any event, this Court should determine that 28 U.S.C.1332(c)(2) is unconstitutional, being contrary to the original public meaning of the Constitution, Art. III, §2. It deprives legal representatives of estates, who are citizens of states other than the decedent, of their Constitutional right to trial in federal court against citizens of other states.

Thus, the Huth Defendants' proposed motion-to-dismiss has multiple flaws or depends on disputed facts which, since the Complaint allegations must be accepted as true on a motion-to-dismiss, require trial for resolution.

Sincerely,

Adam Brook, M.D., Ph.D.
Plaintiff *pro se*
813 Delmar Way Apt. 306
Delray Beach, FL  33483
(415) 516-0787
brook1231@gmail.com