November 7, 2022
Hon. Edgardo Ramos
Thurgood Marshall U.S. Courthouse
40 Foley Square Courtroom 619
New York, NY 10007

**Re:** *Brook v. Ruotolo et al.*, 1:22-cv-06173-ER (S.D.N.Y.)

Your Honor:

I am the Plaintiff *pro se* and write in accordance with your individual practice rules, §2(A)(ii), in response to the letter (Dkt.43) of Charles Kutner, attorney for Defendants The Mary Manning Walsh Nursing Home Company, Inc., Towana Moe, R.N., John Michael Natividad, R.N., Doris Bermudez, R.N., Marie Sweet Mingoa, R.N., Arthur Akperov, R.N., Navjot Sepla, R.N., Allen Logerquist, M.D. and Florence Pua, M.D. (the "MMW Defendants"). Kutner argues that this lawsuit should be dismissed on various procedural grounds and statute of limitations.

The letter has erroneous facts and fails to account for the March 20, 2020 Executive Order (A. Cuomo) No.202.8 (9 N.Y.C.R.R.§8.202.8) and continuing Executive Orders which tolled statutes of limitations from that date until they began to run again on November 3, 2020. *Brash v. Richards*, 195 A.D.3d 582 (App.Div.2021) By that measure, the two years for the wrongful-death action filed here on July 20, 2022 is timely and would have been so through October 29, 2022.

My mother Dr. Judith Brook was forced into MMW against her will and wasn't permitted to leave MMW and go home through the joint participation of Joseph Ruotolo, Esq. and the MMW Defendants. Both Ruotolo and MMW had vested interests, including financial interests, in forcing my mother into MMW and keeping her there. Ruotolo and the MMW Defendants acted together to deprive my mother of her constitutional rights under color of law so that she could not leave.

During her time at MMW, the MMW Defendants committed medical malpractice which proximately caused her wrongful death on March 15, 2020. *See* C.¶470–500.

42 U.S.C.§1983 was enacted to enable suits for damages against persons "clothed with the authority of state law" who violated Americans' Constitutional rights by exceeding their authority. *West v. Atkins*, 487 U.S.42, 49 (1988) Thus, while a police officer cannot legally break into a citizen's home and arrest them without a warrant, a police officer can do so (illegally) because they are a police officer, and §1983 provides a remedy for this wrong. *Monroe v. Pape*, 365 U.S.167 (1961)

"Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law." *US v. Classic*, 313 U.S.299, 326 (1941)

Ruotolo's ability to force my mother into MMW, and prevent her leaving MMW and going home, was made possible only because he was a guardian appointed by the state court judge pursuant to N.Y.M.H.L.Art.81 as part of a conspiracy to so deprive my mother and myself of our constitutional rights and due process. According to Ruotolo's timesheet, Ruotolo submitted his January 3, 2020 Order of Appointment to MMW on January 18, 2020. If Ruotolo was not a state-court-appointed guardian, he would have had no power to direct and control placement of my mother in MMW against her will.

There is no question that, as a matter of law, Ruotolo misused his power as guardian by exceeding his legal authority under N.Y.M.H.L.Art.81. "The decision to move an individual from her home or community to a nursing home or other residential facility affects "constitutionally protected liberty interests" (*Matter of St. Luke's-Roosevelt Hosp. Ctr. [Marie H.—City of New York]*, 89 NY2d 889, 891 [1996]; *see also* Matter of *Eggleston v Gloria N., 55 AD3d 309* [1st Dept 2008]). Thus, Mental Hygiene Law §81.36(c) provides that when a guardian seeks the authority to remove the IP from her home and community against her wishes, the IP must be provided with a hearing on notice before the article 81 court." *Drayton v. Jewish Assn.*, 127 A.D.3d 526, 528 (App.Div.2015)

The January 3, 2020 Order appointing Ruotolo as my mother's guardian didn't authorize him to place my mother in a nursing-home against her will.

1

Nor were the MMW Defendants permitted by law to participate with Ruotolo in forcing my mother into, and forcing my mother to remain in, MMW so that they could charge fees for her care without an appointment order under N.Y.M.H.L.§81.22 and 81.36.

MMW isn't some small rest home for 5 or 10 elderly individuals. It is a 362-bed facility, licensed to operate as a nursing-home by New York State. Accordingly, being duly licensed by the State, MMW employees and officials were obligated to know and follow applicable laws on placement of alleged incapacitated individuals by a Guardian appointed under N.Y.M.H.L.Art.81. The MMW Defendants knew, or should have known, that forced placement in a nursing-home requires a hearing and a court order specifically authorizing such placement. And particularly was this so when she and multiple family members complained about the conditions she was subjected to and asked that she go home.

Thus, the MMW Defendants jointly participated with Ruotolo, a state actor, to force my mother into MMW, and force my mother to remain in MMW. "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents," *Lugar v. Edmondson Oil*, 457 U.S.922, 941 (1982).

Forcing an elderly woman to remain in a nursing home against her will "constitutes a significant deprivation of liberty." *See Addington v. Texas*, 441 U.S.418, 425 (1979) (involuntary commitment in an institution). A Defendant acting under color of state law who involuntarily confines an individual to an institution without authority to do so is liable for monetary damages under 42 U.S.C.§1983. *See O'Connor v. Donaldson*, 422 U.S.563 (1975).

Accordingly, the MMW Defendants are liable under 42 U.S.C.§1983.

Alternatively, if this Court dismisses the §1983 claim against MMW Defendants, but maintains jurisdiction under §1983 against other Defendants, then supplemental jurisdiction lies under 28 U.S.C.§1367 for the state law claims against MMW Defendants which "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy" as alleged at C.¶56. "For purposes of section 1367(a), claims "form part of the same case or controversy" if they "derive from a common nucleus of operative fact."… Where section 1367(a) is satisfied, "the discretion to decline supplemental jurisdiction is available *only if* founded upon an enumerated category of subsection 1367(c).'" *Shahriar v. Smith & Wollensky*, 659 F.3d 234, 245 (2d Cir.2011) None of the enumerated categories of §1367(c) is applicable to the case at bar.

Ruotolo directed MMW staff not to discuss my mother's medical condition or care with me, my mother's sole surviving son and a Board-Certified cardiothoracic surgeon. As expressly alleged in the Complaint (¶469), MMW staff told me that they weren't permitted to discuss my mother's medical condition or care with me because the appointed Guardian Ruotolo had so instructed them. The Complaint allegations must be taken as true on a motion under Rule 12. But for MMW staff's refusal to communicate with me, a licensed New York physician who had successfully cared for my mother in her home for years before these untoward events by the state court, what was done to my mother at MMW could have been avoided.

MMW staff didn't give my mother any of her medications, including pantoprazole, which her gastroenterologist Dr. Srihari Mahadev had prescribed to prevent gastrointestinal bleeding. MMW staff forced her to lie in her own stool 24 hours-a-day. When, predictably, my mother developed gastrointestinal bleeding, MMW staff didn't take her to a hospital. That my mother needed to go emergently to a hospital for resuscitation and evaluation by a gastroenterologist should have been obvious to any healthcare provider given the above. MMW staff failed to provide the most basic level of medical care. *See* detailed factual allegations of malpractice in the Complaint, ¶470–500.

My mother bled into her gastrointestinal tract until she fainted. MMW staff conducted CPR, causing a rib fracture, which led to pneumonia and my mother's premature death. My mother died 71 days after Judge O'Neill-Levy declared my mother "incapacitated" *in absentia*—my mother wasn't in the Court that day—and delivered my mother's person and property into hands of the violent ex-cop Ruotolo, who the evidence shows was Judge O'Neill-Levy's favorite guardian-appointee, to reward him for taking lower value guardianships.

Additional grounds for federal court jurisdiction are complete diversity of the parties. *See* legal discussion in my letter to the Court filed as Dkt.57, responding to the pre-conference letter of Ms. Meenan on behalf of Ruotolo.

Mr. Kutner's assertion that "[t]he diversity statute is unassailable" is incorrect. A party is entitled to raise constitutional issues before the Court where the action is filed, where such constitutional issues affect the cause of action or jurisdiction. *Glick v. CMRE*, No.21 CV 07456 (S.D.N.Y.Feb.17, 2022) is instructive. In that suit, on December 2, 2021, defendants filed a motion-to-dismiss raising Constitutional issues, and 13 days later, on December 15, sent the Attorney General of the United States ("A.G.") a "Notice of Constitutional Challenge". On February 17, 2022, the court certified the Constitutional question.

In the case at bar, Defendants haven't yet filed a formal motion-to-dismiss on lack of diversity pursuant to §1332(c)(2). It seems the usual sequence would be for Plaintiff to notify the U.S. Attorney General of a constitutional challenge a few weeks after Plaintiff files his opposition to Defendants' motion-to-dismiss. The A.G. can decide whether to also brief the issues. Then the Court can rule.

Kutner asserts that I lack capacity to sue for the Estate because I'm not an attorney and there are other heirs. In order to streamline this litigation and avoid having to litigate an issue that distracts attention from Defendants' very serious misconduct, I am seeking an attorney to represent the Estate to moot this objection. I have already commenced such interview. That said, the Eleventh Circuit sitting *en banc* was equally divided on this issue. The circuit judges that decided that the representative of an estate could proceed *pro se* said: "The right of a party to bring an action in federal court under 28 U.S.C.§1654, is a right which is accorded the highest degree of protection. It is, as the Court said in *Faretta v. California*, the "basic right of free people." 422 U.S. 806, 95 S.Ct. 2525." *Reshard v. Britt*, 819 F.2d 1573, 1583 (11th Cir.1987)

Kutner asserts that the wrongful-death claim must be dismissed because "the Statute of Limitations expired before the Action was commenced". Kutner quotes N.Y.E.P.T.L.§5-4.1, which says: "The personal representative … of a decedent … may maintain an action to recover damages for a wrongful act, neglect or default which caused the decedent's death … Such an action must be commenced within two years after the decedent's death." As noted above, the action is timely in view of the tolling under the March 20, 2020 Executive Order (A. Cuomo) No.202.8 (9 N.Y.C.R.R.§8.202.8) and continuing Executive Orders (see *supra*). The *Brash* case above is dispositive. *See also Alati v. State*, 2021 N.Y. Slip Op 51294 (Ct.Cl.2021).

Indeed, because of the coronavirus epidemic, the Surrogate's Court was closed for months. Preliminary Letters Testamentary weren't issued to Plaintiff until February 17, 2021.

With regard to the one-year statute of limitations for intentional-infliction-of-mental-distress, MMW Defendants argue that their conduct ended by February 5, 2020 when they say Judith was removed to the Hospital (during her February 5 stay at MMW, which lasted 1 hour). The Executive Order would have tolled that claim as to MMW at least until September 20, 2021. While the action was filed after that date, a litigant "is "entitled to equitable tolling" if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing … Courts must often "exercise [their] equity powers … on a case-by-case basis," *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377, demonstrating "flexibility" and avoiding "mechanical rules," *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743, in order to "relieve hardships … aris[ing] from a hard and fast adherence" to more absolute legal rules, *Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238, 248, 64 S.Ct. 997, 88 L.Ed. 1250." *Holland v. Florida*, 130 S.Ct.2549, 2553 (2010)

I am a cardiothoracic surgeon and was busy providing care to COVID-19 patients maintained alive by Extra-Corporeal Membrane Oxygenation. Given my clinical responsibilities, I needed sufficient time to prepare the 254-page Complaint in this action, which documents in detail numerous wrongful acts by Defendants and addresses complicated matters of law.

This statute of limitations issue doesn't apply to this intentional tort claim for the other defendants, whose intentional infliction of mental distress continued at least through the submission in 2021 and 2022 of their arguments in support of the huge fees and compensation that the conspirators claim.

For these reasons, the statute of limitations for the wrongful-death claim was timely filed; the intentional-infliction-of-emotional-distress claim, as it pertains to the MMW Defendants, should be equitably tolled, and is timely filed as to the other co-conspirator Defendants making filings in the state court in 2021 and 2022.

Sincerely,

Adam Brook, M.D., Ph.D.
Plaintiff *pro se*
813 Delmar Way Apt. 306
Delray Beach, FL  33483
(415) 516-0787
brook1231@gmail.com