UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Adam Brook,<br><br>                Plaintiff<br><br>v.<br><br>Joseph Ruotolo, Esq., Ira Salzman, Esq., Diana Rosenthal, Esq., Felie Wechsler, Esq., Mental Hygiene Legal Service, Kenneth Barocas, Esq., Ian Shainbrown, Esq., The Shainbrown Firm, L.L.C., Karl Huth, Esq., Huth, Reynolds, L.L.P., Howard Muser, Allegiant Home Care, L.L.C., Ann Reen, R.N., Mary Manning Walsh Nursing Home, Allen Logerquist, M.D., Florence Pua, M.D., Eric Nowakowski, R.P.A.-C, Towana Moe, R.N., John Michael Natividad, Arthur Akperov, Doris Bermudez, Navjot Sepla, Marie Sweet Mingoa, R.N., and John Does #1-10,<br><br>                Defendants. | **Civil Action No. 1: 22 CV 06173** |

## DECLARATION OF JOSEPH RUOTOLO

I, JOSEPH RUOTOLO, pursuant to 28 U.S.C. § 1746, do hereby declare:

    1. I am a named defendant party to this action and at all times relevant acted in my capacity as a Court appointed guardian of the person and property for Judith Brook pursuant to Article 81 of New York State's Mental Hygiene Law.

    2. I submit this declaration in support of my application to dismiss the claims filed against me by Adam Brook, pro se and individually, and on behalf of Judith Brook and the Estate of Judith Brook, and to further support my position that at all times relevant to the allegations made by Adam Brook in his complaint I acted as a court appointed guardian of the person and property of Judith Brook, a person determined by the Court to be incapacitated pursuant to Article 81 of New York State's Mental Hygiene Law (MHL), a statute which sets forth a highly specialized legal process designed to protect and safeguard vulnerable New York State residents.

1

3. I am qualified pursuant to Part 36 Rules of the Chief Judge of the New York State Unified Court System (22 NYCRR 36) for judicial appointments to serve as a guardian by and through the Office of Court Administration. I have maintained my qualifications to serve as a judicial appointee and receive appointments as a guardian, court evaluator, and attorney representing an incapacitated persons and I continue to receive these types of appointments.

4. As a judicial appointee, I act under the direction of the appointing Judge pursuant to the powers delegated to me by direction of the Court detailed in a written order and, where appointed as a guardian, I am required to act pursuant to the best interests of an incapacitated person and the duties and obligations imposed upon me by MHL §§ 81.21, 81.22, 81.23.

5. With regard to this specific matter, a petition seeking the appointment of a guardian for Judith Brook was filed pursuant to MHL § 81.08 by Howard Muser, who became increasingly concerned about the health, well-being and finances of his sister Judith. (See Exhibit A)

6. Howard Muser had standing to file this petition as a concerned family member of Judith Brook. [MHL § 81.06].

7. The petition was filed by Order To Show Cause which commenced the guardianship proceeding. [MHL § 81.07 (b)]. The form and substance of the petition conformed with the requirements set forth in the statute. [MHL § 81.08].

8. As provided by statute, in executing the Order To Show Case, the court appointed a court evaluator with duties prescribed in the statute which include investigating the facts alleged in the petition and making a written report and recommendations to the Court. The report and recommendations " include the court evaluator's personal observations as to the person alleged to be incapacitated and his or her condition, affairs and situation . . .", among other matters [MHL § 81.09]

9. In addition, in executing the Order To Show Cause (Exhibit A), and prior to a hearing on the merits of the claims, I was appointed by the Court to act as a temporary Guardian "upon a showing of danger in the reasonably foreseeable future to the health and well-being of the alleged incapacitated person, or danger of waste, misappropriation, or loss of the property of the alleged incapacitated person." [MHL § 81.23] (See Exhibit B)

10. In addition, the Court appointed Margaret Crowley as a court evaluator to investigate the allegations of the petition and prepare and report and recommendations to the Court. [MHL § 81.09]. (Exhibit A) When Ms. Crowley became ill and was no longer able to serve, the Court appointed Ira Salzman, Esq. to serve as a successor court evaluator by Order, dated November 8, 2019.

11. It is normal practice within a guardianship proceeding for the court to appoint a successor when an initial court appointee is unable to continue to serve.

12. The Court also appointed Mental Hygiene Legal Services, by Diana Rosenthal, as counsel to Judith Brook [MHL § 81.10].

13. The Court later substituted Kenneth Barocas as counsel for Judith Brook in the proceeding, issuing an order wherein a request filed by Mental Hygiene Legal Services to be relieved as counsel was granted by the Court since Judith Brook was not indigent requiring representation by this state sponsored legal service agency.

14. As a court appointed guardian, my power to act is guided by those powers granted to me by the appointing court order [MHL § 81.20] influenced by duties imposed upon me by statute, as below, all of which necessitate that I exercise independent judgment and discretion in making decisions in the best interests of the incapacitated person I am appointed to protect.

15. As stated above, the duties and powers of a guardian are set forth by statute which include a duty to exercise only those powers authorized by court order; a duty to exercise the utmost care and diligence when acting on behalf of the incapacitated person; and the duty to exhibit the utmost degree of trust, loyalty and fidelity in relation to the incapacitated person. [MHL §§ 81.20, 81.21, 81.22, 81.23].

16. In this matter, the Court issued various Orders prior to the commencement of the hearing. For example, on May 31, 2019, the Court issued an Order authorizing me to facilitate Judith Brook's discharge from NY Presbyterian Hospital where she had been hospitalized, if deemed medically appropriate by her care team. On July 8, 2019, the Court issued an Order noting that Adam Brook agreed to refrain from making withdrawals or transfers from Judith Brook's assets until further Order by the Court.

17. A hearing on the petition filed by Howard Muser was commenced on October 18, 2019 and concluded on January 3, 2020. The hearing was conducted pursuant to MHL § 81.11 (b) where the parties to the proceedings, including Adam Brook, had the opportunity to present evidence, call witnesses, including expert witnesses, and be represented by counsel.

18. Adam Brook, son to Judith Brook, received notice of the proceeding [MHL § 81.07 (g)] and did appear in the action and did fully participate, as indicated above, initially represented by counsel, and, subsequently, self-represented.

19. Nicole Hazard, who was married to Judith Brook's predeceased son David, filed a cross-petition seeking to be appointed guardian for Judith Brook, but that petition was denied by the Court.

20. It is within the discretion of the Court to conduct the guardianship hearing, in whole or part, without the presence of Judith Brook pursuant to MHL § 81.11 (d), especially if the

incapacitated person is ill and/or otherwise incapable of meaningfully participating in the process. At all times, court appointed counsel was present to represent Judith Brook's interests and as best I can recall Judith Brook did appear for part of the proceeding. In general, Judith Brook was not in good health from the inception of the guardianship process.

21. At the conclusion of the January 20, 2020 hearing, and after hearing testimony and reviewing relevant information, including the report and recommendations made by two court evaluators, the Court made determinations, on the record, that petitioner Howard Muser had met his burden of proof, by clear and convincing evidence, that Judith Brook was incapacitated and required the appointment of an independent guardian. [MHL § 81.12 (a)].

22. During this hearing, as in most contested proceedings, the Court made credibility determinations, declined to sign subpoenas for information requested by Adam Brook, declined applications made by Adam Brook, declined a request made by Adam Brook to adjourn the hearing, revoked Adam Brook's powers to act as an agent for Judith Brook under a power of attorney and health care proxy, waived Judith Brook's presence due to her infirmity and illness, permitted the appointment of a successor court evaluator and successor legal counsel to Judith Brook, all normal protocols and practices in a guardianship proceeding.

23. After the conclusion of the hearing, the Court issued a written Order, dated January 3, 2020, detailing the findings, including that Judith Brook was an incapacitated person requiring the appointment of a guardian. This written Order provided that Adam Brook was restrained from removing his mother from the State of New York; from interfering with home care or other medical treatment and that his authority to act as an agent for his mother pursuant to a power of attorney and health care proxy was revoked. [MHL §§ 81.02 (b)(c); 81.15; 81.23. (b); 81.29 (d)] (See Exhibit C)

24. Adam Brook filed an appeal with the Appellate Division, First Department seeking to reverse the decision appointing a guardian for Judith Brook. The First Department affirmed the lower court's ruling and its appointment of a guardian for Judith Brook. In response to the decision by the First Department, Adam Brook sought to re-argue his appeal and filed leave to appeal with the New York State Court of Appeals, all of which were denied. See, *Matter of Muser v. Muser*, 192 AD3d 429 (1st Dept 2021, lv denied, 37 NY3d 914 (2021)).

25. Thereafter, Adam Brook filed an application with the guardianship Court to vacate its January 3, 2020 Order appointing a guardian and, in a decision dated April 1, 2022, that application to reverse the Order appointing a guardian was denied by the Court, noting that the First Department had already affirmed the determination.

26. In another decision issued by the Appellate Division, First Department, dated June 28, 2022, wherein Adam Brook challenged an Order issued by the guardianship court involving discovery issues, the Appellate Court found "[t]he majority of [Adam Brook's] appeal is directed at challenging the appointment of a guardian in the first instance. However, the merits of the underlying guardianship application have already been the subject of an unsuccessful appeal before this Court (*Matter of Muser v. Muser*, 192 AD3d 429 (1st Dept 2021, lv denied, 37 NY3d 914 (2021)), which we will not now disturb." This appellate decision also affirmed other orders issued by the guardianship Court, which included denying Adam Brook's motion to compel disclosures from Howard Muser and declining to sign subpoenas.

27. My appointment by the Court as a Temporary Guardian provided me with authority to, inter alia, pay bills as reasonably necessary to maintain Judith Brook at home or in an appropriate facility, consent to routine and major medical procedures and make decisions as to the social environment of Dr. Judith Brook, among other matters.

28. In January of 2021, Judith Brook was temporarily transferred from NY Presbyterian Hospital to a subacute unit at Mary Manning Nursing Home for rehabilitation care based upon her treating physician's recommendations. There was no requirement that I obtain a Court order to comply with this medical directive as I was given authority by the Court to consent to routine and major medical procedures. It is a routine medical recommendation for a hospitalized elderly and ill person, such as Judith Brook, to be transferred from a hospital to a subacute facility for rehabilitation services before being medically cleared to be discharged home. In this matter, subacute rehabilitation services were provided to Judith Brook by Mary Manning Nursing Home.

29. When I was initially appointed to act as a Temporary Guardian in May of 2019, I participated in Judith Brook's discharge from Riverside Rehabilitation Service Center to her home.

30. My appointment as guardian was recommended as appropriate by the assigned court evaluator. [MHL § 81.09 (5)(xiv)].

31. In addition, the Court is permitted to have ex-parte conversations with Court appointees in guardianship matters. [See, e.g. Judiciary Opinion 22-56, 22-67: A judge who appoints fiduciaries in a guardianship part may (1) direct court staff to update the Part 36 fiduciary list by contacting the listed individuals to inquire whether they are currently accepting such assignments; (2) personally inquire whether a prospective appointee is available to accept assignment in a particular case, even if the Alleged Incapacitated Person is indigent, provided the judge avoids undue pressure or coercion; and (3) direct court staff to make such inquiry on the judge's behalf]{[ee, also, MHL 81.09]

32. Also, by authority of the Court, I was permitted to marshal limited assets of Judith Brook into a guardianship account for the payment of her ongoing bills. Like other matters in

this proceeding, Adam Brook took issue with the nature and extent of the asset transfer which took place approximately one month before his mother died.

33. Judith Brook died on March 15, 2020. (See Exhibit D).

34. Finally, I have not yet been discharged by the appointing Court as guardian for Judith Brook. Pursuant to guardianship practices and procedures, after Judith Brook died on March 15, 2020, I filed a final guardianship report [MHL § 81.33] containing all information relevant to the services I provided to Judith Brook, including an accounting of the monies spent and received on behalf of Judith Brook [MHL § 81.31].

35. In addition, I submitted a petition requesting to be paid for the services I performed for Judith Brook, as the award of compensation to me, as a guardian, like other court appointees in guardianship matters, is up to the discretion of the Court. [MHL § 81.28]. To date, I have not been paid for any service I provided to Judith Brook. Any payments for services to Judith Brook will be from the funds I marshalled and maintained in a guardianship banking account.

36. After Judith Brook's death, Adam Brook and legal counsel representing the Estate of Judith Brook, challenged the authority of the guardianship court to address post death matters, including an award of compensation to court appointees who served in the guardianship. Having issued an Order rejecting these challenges, the Court then conducted a hearing to address the merits of Adam Brook's challenges to my request to be paid compensation for my services and to be discharged as guardian. That decision is pending.

37. Finally, Adam Brook was not authorized by the Surrogate Court, New York County to act as the sole fiduciary of Judith Brook's Estate. Both the Preliminary Letters Testamentary, issued on May 19, 2020, and the subsequent Letters Testamentary, issued on August 26, 2022, indicate the Surrogate Court appointed Adam Brook and Nicole Hazard Brook, as co-fiduciaries to represent the Estate of Judith Brook. (See Exhibit E).

I state the above noted information under the penalty of perjury.

Date: 12/20/22

_Joseph Ruotolo_
JOSEPH RUOTOLO
