UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADAM BROOK,

                          Plaintiff,

          – *against* –

JOSEPH RUOTOLO, ESQ., *et al.*,

                          Defendants.

**OPINION & ORDER**

22-cv-6173 (ER)

ESTATE OF JUDITH BROOK *and*
ADAM BROOK,

                          Plaintiffs,

          – *against* –

MONITOR/ME, LLC, *et al*.,

                          Defendants.

23-cv-1319 (ER)

Ramos, D.J.:

        This consolidated action arises out of allegations by the Estate of Judith Brook

("the Estate") and Adam Brook ("Adam"), in his individual capacity and as personal

representative of the Estate (together, "Plaintiffs"), that Defendants conspired to declare

Judith Brook incapacitated, seize her assets, and force her into a nursing home where she

was deprived of proper medical treatment, leading to her death.  Before the Court are

Defendants' motions to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), as well as Adam's motion to disqualify Ian Shainbrown and Joshua Rushing.

22-cv-6173 ("*Brook I*"), Docs. 89, 90, 93, 95, 98, 100, 103, 106; 23-cv-1319 ("*Brook II*"),

Docs. 36, 39.  For the following reasons, the motions to dismiss are GRANTED, and the

motion to disqualify is DENIED as moot.

## I.     BACKGROUND

### A.  Factual Background

Dr. Judith Brook ("Judith") was a renowned researcher and professor of psychiatry. *Brook I*, Doc. 1 ("*Brook I* Compl.") ¶ 24.  As part of her estate planning, on June 15, 2006, while she was of sound mind and body, Judith appointed her husband, David Brook, as her attorney-in-fact and healthcare proxy.  *Id.* ¶ 58.  She further appointed her sons Jonathan Brook and Adam as substitute attorneys-in-fact and healthcare proxies.  *Id.*  Adam is also a medical doctor.  *Id.* ¶¶ 26, 61.  After Jonathan Brook died on July 3, 2015 and David Brook died on November 20, 2018, Adam became Judith's sole attorney-in-fact and healthcare proxy.  *Id.* ¶ 58.  Judith's will also left the bulk of her $8 million estate to Adam and to Jonathan's two daughters.  *Id.* ¶¶ 69–71. Adam lived with his mother at the family home in Central Park West, Manhattan.  *Brook II*, Doc. 1 ("*Brook II* Compl."), ¶ 12.

Judith also had a brother, defendant Howard Muser, but her will left only small bequests for Muser and his children and nothing for his wife.  *Brook I* Compl. ¶ 67.  In fact, in July 2018, Muser even asked Judith to increase the amount of the bequests to his children, but Judith told Muser it "was a bad idea."  *Id.* ¶¶ 69–71.

In September 2018, Judith sustained a spinal fracture, and underwent a balloon kyphoplasty procedure at NYU-Langone Hospital to alleviate her pain.  *Id.* ¶¶ 72–73. Unfortunately, the procedure led Judith to suffer a second spinal fracture, and the medication prescribed to treat her resulting pain left her in a coma for three days.  *Id.* ¶¶ 73–76.  Once Judith awoke, NYU-Langone discharged Judith to the Riverside Premier Rehabilitation and Healing Center ("Riverside").  *Id.* ¶ 77.  But Adam was dissatisfied with his mother's condition and took her by ambulance from Riverside to New York Presbyterian Weill-Cornell Hospital ("New York Presbyterian").  *Id.* ¶ 78.  New York Presbyterian physicians diagnosed that, while Judith had been in the coma, she had developed bilateral deep vein thromboses and pulmonary emboli, which they decided to

treat with a regimen of anticoagulants. *Id.* ¶¶ 76, 79. Unfortunately, while the anticoagulants successfully treated the pulmonary emboli, they also caused Judith to bleed into her stomach from a hereditary hemorrhagic telangiectasias disease. *Id.* ¶ 79. The bleeding was treated successfully with an endoscopy. *Id.* By May 2019, Judith was at Riverside, making a steady recovery and was about to be discharged. *Id.* ¶ 80. Riverside recommended that Judith have 24/7 supervision when she was at home, which Adam arranged. *Id.* ¶ 81.

On May 9, 2019, Muser filed a petition to have Judith declared incompetent, void Adam's power of attorney and health care proxy, and have Muser appointed as her guardian with his wife as successor guardian ("the Petition"). *Id.* ¶ 84. Muser's son-in-law, defendant Ian Shainbrown, and Shainbrown's colleague and friend, defendant Karl Huth—through their respective law firms, defendants the Shainbrown Firm, L.L.C., and Huth, Reynolds, L.L.P—prepared and filed the Petition.[1] *Id.* ¶ 85. The Petition alleged that Adam was misappropriating his mother's wealth and withholding medical treatment and support from her, even as multiple people pled for him to provide her care; that, while Judith was incapacitated, Adam had forced her to execute documents granting him total control of her personal and property management; and that Adam had refused Muser's repeated requests over five months to discuss the nature of those documents. *Id.* ¶¶ 60, 89–92, 96–112. It alleged that Judith was "distraught" over Adam's conduct and wanted Muser to intervene. *Id.* ¶¶ 91, 94, 107. The Petition also sought the appointment of a temporary guardian while the guardianship matter was resolved. *Id.* ¶ 86. Adam alleges that Muser, frustrated with the small bequests in Judith's will and her repeated refusals to give him money, filed the Petition to gain control of Judith's assets and increase the bequests for himself and his family; and Muser intended the temporary

---

[1] Shainbrown and the Shainbrown Firm, L.L.C. are collectively referred to herein as "the Shainbrown Defendants"; and Huth and Huth, Reynolds, L.L.P. are "the Huth Defendants."

guardian to "spy" on Judith and Adam and feed the court lies and half-truths about Adam's purported maltreatment of Judith. *Id.* ¶¶ 67, 84, 86.

Justice Kelly O'Neill-Levy of the New York Supreme Court, New York County, heard the Petition and signed an order to show cause on May 16, 2019, appointing defendants Mental Hygiene Legal Services ("MHLS") to represent Judith, and Margaret Crowley, Esq.[2] as court evaluator. *Id.* ¶ 118. Defendants Diane Rosenthal, Esq., and Felice Wechsler, Esq., of MHLS, served as Judith's court-appointed attorneys (with MHLS, "the MHLS Defendants"). *Id.* ¶¶ 31–32, 149. Justice O'Neill-Levy also appointed defendant Joseph Ruotolo, Esq., to serve as Judith's temporary guardian on May 28, 2019 and expanded his powers on May 30, 2019.[3] *Id.* ¶¶ 117, 133. On May 29, 2019, Ruotolo, in his first act as guardian, canceled Judith's discharge from Riverside. *Id.* ¶ 135.

On May 30, 2019, while at Riverside, Judith got out of bed, attempted to walk down the hall, and fell, suffering a hairline fracture to her humerus and a fracture to her nose. *Id.* ¶¶ 136–38. On May 31, 2019, Adam visited Judith at New York Presbyterian (where she was hospitalized to recover from her fall) and found Muser there as well; Judith told Muser and Adam that she did not want the court or Muser involved and wanted Adam in charge of her care. *Id.* ¶¶ 139–42. Muser agreed during the visit to withdraw the Petition, but he did not thereafter do so. *Id.* ¶ 143.

When Judith was to be discharged from New York Presbyterian, Ruotolo directed that she be returned to Riverside rather than return home with Adam, even though Judith did not wish to return to Riverside. *Id.* ¶¶ 144–47. The Complaint is inconsistent as to

---

[2] Following a prolonged illness, Crowley withdrew as court evaluator on November 8, 2019 and died on August 3, 2020. *Id.* ¶¶ 118, 127, 359. Justice O'Neill-Levy appointed defendant Ira Salzman, Esq., successor court-evaluator on November 18, 2019. *Id.* ¶ 30.

[3] In some places, the Complaint states that Ruotolo was appointed in May 2019, *see e.g., id.* ¶ 117, but in other places it states that the appointment occurred in May 2020*, see e.g., id.* ¶ 133. As Judith died March 15, 2020, *id.* ¶ 24, the Court attributes the 2020 dates to a typographical error.

when Judith was discharged from New York Presbyterian and whether she was discharged to Riverside or back home with Adam.  It first states:  "On June 8, 2019, four large men . . . forcibly dragged 100-pound Judith Brook out of her hospital room, strapped her . . . to a gurney, and carted her off to the Riverside rehabilitation facility on Ruotolo's instructions."  *Id.* ¶ 147.  Thereafter, however, it states that Judith was only ready for discharge from New York Presbyterian on June 21, 2019, and Ruotolo refused that day to let her go home, and on June 24, 2019, Judith was slated for discharge to Riverside, but Ruotolo "[e]ventually . . . relented" and allowed her to be discharged home.  *Id.* ¶¶ 178–84.  Ruotolo further appointed defendant Allegiant Home Care, L.L.C. ("Allegiant") to provide homecare services to Judith, including home health aides ("HHAs") and nurses.[4]  *Id.* ¶ 40.

Justice O'Neill-Levy presided over hearings on the Petition on July 1, 2019 and September 6, 2019, and held a trial held on October 18, 2019.  *Id.* ¶¶ 225, 354, 356.  Adam alleges the defendants intentionally created a record of misrepresentations, which they then presented at the guardianship proceedings, including:

- Crowley informed the court that Adam refused to provide Judith the 24/7 care that Riverside recommended, but Adam alleged he never refused to do so and provided an HHA.  *Id.* ¶¶ 119–27, 248.  Crowley's court-evaluator report was admitted, over Adam's objection, without cross-examination because Crowley was ill.  *Id.* ¶¶ 127–30.

- Adam alleged Judith informed her MHLS attorney Rosenthal that she did not wish to be declared incapacitated, nor did she want a guardian but instead wanted Adam to be in charge of her care, but Rosenthal did not advocate for Judith's stated desires.  *Id.* ¶¶ 149–61.

- Ruotolo claimed that there was no food at home except ice cream, and the resulting lack of proper nutrition had caused Judith to be taken to the emergency room with severe diarrhea and pain.  *Id.* ¶¶ 186–92, 201.  But Adam alleged the house was well-stocked with perishable and non-perishable goods; he had given Judith's caretakers an unlimited credit card authorization to order anything further that Judith wished to eat; and Judith was not taken to the hospital for diarrhea, merely to her geriatrician, who diagnosed that the

---

[4] Defendant Ann Reen, R.N., Allegiant's vice president (with Allegiant, "the Allegiant Defendants"), was directly involved with Judith's homecare services and the related billing and invoicing.  *Id.* ¶ 41.

diarrhea and pain were from a bacterial infection caused by the antibiotics she
had been prescribed for a urinary tract infection. *Id.*

- Ruotolo stated that he had received reports from Allegiant that "Judith is
  lethargic and playing in feces daily," but Adam denied both allegations. *Id.*
  ¶¶ 232–35.

- Ruotolo alleged Adam had refused to pay for Judith's home health care
  services for months, risking termination of those services, but Adam alleges
  that he was charged and timely paid all of Judith's expenses. *Id.* ¶¶ 305–52,
  360–61.

Adam alleged that Justice O'Neill-Levy conspired with the defendants to create this
fictious record and thereby declare Judith incapacitated so that the defendants could rack
up excessive and unnecessary fees against Judith's assets. *See, e.g., id.* ¶¶ 131, 167, 190,
205–210, 266–67, 615.

On January 3, 2020, Justice O'Neill-Levy terminated Adam's power of attorney
and healthcare proxy and expanded Ruotolo's guardianship powers over Judith and her
property. *Id.* ¶ 117.

Three days later, on January 6, 2020, Adam alleged no nurse came to administer
Judith's medication for her, so he administered it; Ruotolo filed a police report against
Adam on January 11, 2020 alleging that Adam was interfering with his mother's
medication. *Id.* ¶¶ 448–59.  On January 12, 2020, Judith became ill from either Adam's
(according to Ruotolo) or Allegiant's (according to Adam) mishandling of the medication
and was taken to New York Presbyterian by ambulance. *Id.* ¶¶ 460–61, 465.

When Judith was discharged from New York Presbyterian five days later on
January 17, Ruotolo directed that Judith go to defendant Mary Manning Walsh Nursing
Home ("MMW") over Judith's protests that she did not want to go to the nursing home.
*Id.* ¶¶ 467–68; *Brook II* Compl., ¶¶ 15, 22–24.  Adam alleges that, because of Ruotolo's
instructions to MMW not to inform Adam regarding Judith's condition or medical care,
he was not able to tell MMW staff about the importance that Judith receive a particular
medication that he alleged was important and that New York Presbyterian had included
on its discharge medication list. *Brook I* Compl. ¶ 469–75.  He also alleges that MMW

was negligent in several ways, including prohibiting Judith from walking to the bathroom and instead forcing her to lie in her own stool for hours, as well as failing to recognize the symptoms of her gastrointestinal bleeding. *Id.* ¶¶ 476, 497. Similarly, when Judith refused to take her medication, MMW staff[5] simply did not give them to her (including cardiac medication and medication to prevent gastrointestinal bleeding), nor did they inform Adam, who could have convinced Judith to take the medication "because she listened to what her son said," and he "was her protector." *Id.* ¶¶480–82, 485–86. Additionally, MMW contracted with Monitor/Me, L.L.C. ("Monitor/Me") to provide telemedicine services to MMW patients.[6] *Brook II* Compl. ¶ 90.

On January 21, 2020, Judith had a seizure, became unresponsive, and lost consciousness, for which she was administered CPR at MMW and then taken by ambulance to New York Presbyterian's emergency room.[7] *Brook I* Compl. ¶¶ 535–37. New York Presbyterian diagnosed Judith with a rib fracture from the CPR. *Id.* ¶ 547. On February 5, 2020, at Ruotolo's direction, Judith returned to MMW upon her discharge from New York Presbyterian. *Id.* ¶ 560. While the paramedics were transporting Judith to MMW, however, she had difficulty breathing, and the paramedics asked an MMW physician to evaluate her; the MMW physician determined that Judith needed to return to New York Presbyterian, where she was then taken and readmitted. *Id.*¶¶ 564–66.

On January 31, 2020, MHLS requested to vacate its appointment as counsel for Judith, which Justice O'Neill-Levy granted on February 6, 2020 and named defendant

---

[5] Among the MMW medical staff Adam alleges were negligent and committed malpractice are defendants Allen Logerquist, M.D., Florence Pua, M.D., Eric Nowakowski, R.P.A.-C., Towana Moe, R.N., John Michael Natividad, R.N., Arthur Akperov, R.N., Doris Bermudez, R.N., Navjot Sepla, R.N., and Marie Sweet Mingoa, R.N. (together with MMW, "the MMW Defendants"). *Id.* ¶ 538.

[6] Nowakowski was employed by Monitor/Me to provide MMW telemedicine services, where he was supervised by defendant Jason Kubert, M.D., of Monitor/Me. *Id.* ¶ 42. Defendant Anthony Bacchi, M.D. is alleged to be the alter ego of Monitor/Me. *Id.* ¶ 44.

[7] Adam alleges that Judith was hospitalized because of (1) the failures to diagnose Judith's condition and improper medicating and (2) MMW's failure to communicate with him because he "would have caught their errors and thereby prevented the devastating consequences of their errors." *Brook I* Compl. ¶ 536.

Kenneth Barocas, Esq., as successor counsel. *Id.* ¶¶ 567–68. On February 14, 2020, Barocas (allegedly without having ever spoken to Judith) supported Ruotolo's request to expand his guardianship powers to allow Judith to be involuntarily placed in hospice, and New York Presbyterian physicians not be required to speak with Adam regarding Judith's medical condition or care. *Id.* ¶¶ 578–83. Justice O'Neill-Levy granted the request. *Id.*

On February 15, 2020, Adam found his mother unresponsive at New York Presbyterian. *Id.* ¶ 584. New York Presbyterian medical staff discovered that Judith had another gastrointestinal bleed, which they treated. *Id.* ¶ 586. Judith regained consciousness the next day but fell back into a coma the day after that.[8] *Id.* ¶¶ 586–87. Judith never recovered from her coma and died while still at New York Presbyterian on March 15, 2020. *Id.* ¶ 601.

In February and March 2020, while Judith was hospitalized at New York Presbyterian, Ruotolo liquidated portions of her stock and engaged in other transfers of securities and cash from Judith's accounts, which Adam alleges vitiated Judith's estate plans and incurred massive and unnecessary tax consequences to the beneficiaries of Judith's estate. *Id.* ¶¶ 602–12. Ruotolo's guardianship ended by law at Judith's death on March 15, 2020, but, when he submitted a final accounting to Justice O'Neill-Levy, it was based on the estate's increased value on April 30, 2020 and contained several other alleged financial irregularities. *Id.* ¶¶ 616–26.

Relatedly, Adam alleges Allegiant committed billing fraud, charging inflated prices for unnecessary or unperformed work. *Id.* ¶¶ 633–44. And Adam contends that the Shainbrown and Huth Defendants also submitted fraudulent bills to Justice O'Neill-Levy for unnecessary or unperformed work. *Id.* ¶¶ 649–50. Thus, Adam alleges that

---

[8] Adam alleges Judith's coma could have been avoided had New York Presbyterian staff been required to communicate with him because he "would have urged [the] medical staff to treat Judith[]'s gastrointestinal bleeding aggressively and to obtain cardiology consultation." *Id.* ¶ 588.

Defendants' conspiracy and wrongful conduct cost the estate hundreds of thousands, if not millions, in accounting and legal fees. *Id.* ¶¶ 629–30.

Letters Testamentary were issued on February 17, 2021, and Adam was appointed co-executor of Judith's estate. *Brook II* Compl. ¶ 2.

**B. Procedural History**

Adam, personally and as a personal representative of the Estate, filed suit against Ruotolo, Salzman, the MHLS Defendants, Barocas, the Shainbrown Defendants, the Huth Defendants, Muser, the Allegiant Defendants, and the MMW Defendants on July 20, 2022. *Brook I* Compl.  He brought claims under 42 U.S.C. § 1983 and § 1988, as well as eleven state law claims (New York constitutional tort violation, wrongful death, survivorship, breach of fiduciary duty, medical and legal malpractice, fraudulent billing, unjust enrichment, violation of the Judiciary Law, fraud on the court, and intentional infliction of emotional distress). *Id.* ¶¶ 652–717.  The complaint alleges the Court has subject matter jurisdiction under both diversity and federal question jurisdiction. *Id.* ¶¶ 53–56.

On February 16, 2023, Adam and the Estate then filed a second action against the Monitor/Me Defendants for the same MMW-related conduct alleged in the first action. *Brook II* Compl.  He again brought claims under 42 U.S.C. § 1983 and § 1988 alongside eleven state law claims, several of which were the same as of the first action (New York constitutional tort violation, wrongful death, survivorship, breach of fiduciary duty, medical malpractice, intentional infliction of emotional distress, negligence, negligent supervision, negligent selection, negligent retention, and respondeat superior). *Id.* ¶¶ 151–223.  The complaint alleges the Court has federal question subject matter jurisdiction. *Id.* ¶¶ 47–49.

The two actions were consolidated on April 18, 2023. *Brook II*, Doc. 35.

Defendants moved to dismiss both actions under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, including under the *Rooker-Feldman*

abstention doctrine and on the basis that some defendants are subject to absolute immunity under the Eleventh Amendment as quasi-judicial actors, as well as under Rule 12(b)(6) for failure to state a claim. *Brook I*, Doc. 90 (Ruotolo Mot.), Doc. 93 (MHLS Defs. Mot.), Doc. 95 (Salzman Mot.), Doc. 98 (MMW Defs. Mot.), Doc. 100 (Huth Defs. Mot.), Doc. 103 (Defs.[9] Joint Mot.), Doc. 106 (Nowakowski Mot.); *Brook II*, Doc. 36 (MMW Mot.), Doc. 39 (Kubert Mot), Doc. 41 (Nowakowski letter mot.) (joining and adopting MMW and Kubert's motions). Additionally, Adam moved to disqualify as counsel Shainbrown (who represents the Shainbrown Defendants and Muser) and Joshua Rushing (who represents the Huth Defendants). *Brook I*, Doc. 89.

## II.    LEGAL STANDARDS

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted).

### A.  Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question"). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). While the Court must accept as true all factual allegations in the complaint, *Morrison*, 547 F.3d at 170, it may not draw any

---

[9] The Joint Motion is filed on behalf of all defendants in the first action ("the *Brook I* Defendants") except Nowakowski and the Allegiant Defendants. The Allegiant Defendants were served after the motion was filed and joined it thereafter. Doc. 118.

jurisdictional inferences in favor of Plaintiffs, *Fraser v. United States*, 490 F. Supp. 2d 302, 307 (E.D.N.Y. 2007) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (citing *Drakos*, 140 F.3d at 131). Thus, in resolving a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a district court may consider evidence outside the pleadings. *Morrison*, 547 F.3d 170 (citing *Makarova*, 201 F.3d at 113).

**B.   Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its

substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

## III.   DISCUSSION

When the Court is confronted by a motion raising a combination of Rule 12(b) defenses, it will pass on the jurisdictional issues before considering whether the complaint states a claim. *Foley v. Union de Banques Arabes Et Françaises*, No. 22-cv-1682 (ER), 2023 U.S. Dist. LEXIS 125579, at *17 (S.D.N.Y. July 20, 2023) (citations omitted). Accordingly, the Court first addresses Defendants' arguments as to subject matter jurisdiction. Because the Court holds that it lacks both federal question and diversity subject matter jurisdiction in both actions, it need not reach the arguments concerning *Rooker-Feldman* abstention or immunities, and it may not consider any arguments under Rule 12(b)(6).

### A.   The Court Lacks Federal Question and Supplemental Jurisdiction

Federal question subject matter jurisdiction exists where a "civil actions aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, the only federal causes of action are a single § 1983 claim[10] in each of *Brook I* and *Brook*

---

[10] Both actions also purport to assert claims under § 1988. However, as the *Brook I* Defendants correctly point out (Doc. 104 at 13), § 1988 does not give rise to an independent cause of action; it merely sets forth the procedure governing other civil rights actions. *See Roundtree v. New York*, 778 F. Supp. 614, 617–18 (E.D.N.Y. 1991) ("[T]he plaintiff states in his complaint that he proceeds as well under 42 U.S.C. Section 1988. This section does not, however, provide a cause of action; rather, it governs actions or proceedings brought to enforce other civil rights provisions (such as Section 1981 or Section 1983).").

*II. Brook I* Compl. ¶¶ 652–717; *Brook 2* Compl. ¶¶ 151–223.  Section 1983 claims may
only be brought where defendants are state actors or acted under color of law.  42 U.S.C.
§ 1983; *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999) ("To state a
claim for relief in an action brought under § 1983, [plaintiffs] must establish that they
were deprived of a right secured by the Constitution or laws of the United States, and that
the alleged deprivation was committed under color of state law.  Like the state-action
requirement of the Fourteenth Amendment, the under-color-of-state-law element of
§ 1983 excludes from its reach merely private conduct, no matter how discriminatory or
wrongful." (citation and internal quotation marks omitted)).

Defendants argue, however, that they are not state actors, and no § 1983 claim
may therefore lie against them, as a result of which the Court lacks federal question
jurisdiction.  *Brook I*, Doc. 92 (Ruotolo) at 6–7, Doc. 94 (MHLS Defs.) at 10–11, Doc. 97
(Salzman) at 9–14, Doc. 99 (MMW Defs.) at 10–11, Doc. 102 (Huth Defs.) at 4–9; *Brook
II*, Doc. 37 (MMW Defs.) at 13–14, Doc. 40 (Kubert) at 5–7.  Plaintiffs respond that the
defendants acted under color of law first because MHLS attorneys Rosenthal and
Weschler are state employees (*Brook I*, Doc. 127 at 8); and Ruotolo and Salzman were
court (and therefore state) appointed (*Brook I*, Doc. 119 at 12–16, Doc. 128 at 8–9).
Further, Plaintiffs argue Defendants acted under color of law insomuch as they conspired
with state actors, including Justice O'Neill-Levy and Ruotolo as a court-appointed
guardian, to violate Plaintiffs' rights.  *Brook I*, Doc. 119 at 12–16, Doc. 125 at 7–8, Doc.
126 at 5–6, Doc. 127 at 8, Doc. 128 at 8–9; *Brook II*, Doc. 44 at 7–14, Doc.45 at 7–12.

The Court holds that no federal question jurisdiction exists because no defendant
is a state actor either by virtue of their own authority and actions or through the existence
of a conspiracy with state actors, and there is thus no federal claim on which to base
original subject matter jurisdiction.  First, neither Rosenthal, Weschler, Ruotolo, nor
Salzman were state actors by virtue of their positions.  Rosenthal and Weschler, Judith's
court-appointed attorneys, were employees of MHLS, a New York state agency.  *Brooks I*

Compl. ¶¶ 31–33.  But, court-appointed attorneys, *including* MHLS attorneys, do not act under color of state law by virtue of their appointment.  *Sasscer v. Barrios-Paoli*, No. 05-cv- 2196 (RMB), 2008 WL 5215466, at *6 (S.D.N.Y. Dec. 8, 2008); *Pecou v. Hirschfeld*, No. 07-cv-5449 (SJF), 2008 WL 957919, at *2 (E.D.N.Y. Apr. 3, 2008).  Ruotolo and Salzman served, respectively, as court-appointed guardian and evaluator.  *Id.* ¶¶ 27, 30.  But, a court-appointed guardian likewise does not act under color of state law by virtue of his appointment.  *Shabtai v. Shabtai*, No. 20-cv-10868 (JGK), 2021 U.S. Dist. LEXIS 73759, at *4 (S.D.N.Y. Apr. 16, 2021); *Galanova v. Portnoy*, 432 F. Supp. 3d 433, 445–46 (S.D.N.Y. 2020); *Sasscer*, 2008 WL 5215466, at *5; *Storck v. Suffolk Cnty. Dep't of Soc. Servs.*, 62 F. Supp. 2d 927, 941 (E.D.N.Y. 1999).  Nor does a court-appointed evaluator.  *Shabtai*, 2021 U.S. Dist. LEXIS 73759, at *4.  Accordingly, neither court-appointed attorneys Rosenthal and Weschler, nor court-appointed evaluator Salzman, nor court-appointed guardian Ruotolo were state actors.  *See Duboys v. Bomba*, 199 F. Supp. 2d 166, 170 (S.D.N.Y. 2002) ("[T]he law in this Circuit consistently holds that a court appointment of a private individual is not sufficient to establish state action." (citations omitted)).

Moreover, Plaintiffs have not established that any of the defendants, as private actors, became state actors by virtue of conspiracy with state actors.  Section 1983 claims may be brought where a private actor conspired with a state actor to deprive the individual of their rights.  *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) ("[A] private actor acts under color of state law when the private actor 'is a willful participant in joint activity with the State or its agents.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970))).  But "'a merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against' a private party."  *Browdy v. Karpe*, 131 F. App'x 751, 753 (2d Cir. 2005) (quoting *Ciambriello*, 292 F.3d at 324); *see also Sasscer*, 2008 WL 5215466, at *6 ("[I]n any event, Plaintiff's conclusory assertion is insufficient to allege a conspiracy between [the

court-appointed individual] and [the judge]." (citing *Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (internal quotations omitted)))).  Particularly, the plaintiff "must provide some factual basis supporting a meeting of the minds" between the state and private actors to cause the injury, and he must provide some details of time and place. *Catania v. United Fed'n of Teachers*, No. 21-cv-1257 (GHW) (JW), 2023 U.S. Dist. LEXIS 73772, at *9–10 (S.D.N.Y. Apr. 26, 2023) (R&R) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000)); *see also Quirk v. DiFiore*, 582 F. Supp. 3d 109, 115 (S.D.N.Y. 2022) (citing *Ortiz v. Ledbetter*, No. 19-cv-2493, 2020 WL 2614771, at *6 (S.D.N.Y. May 22, 2020)).  Here, despite having filed two complaints amounting to over 300 pages, Plaintiffs have not properly pled a conspiracy between any of the defendants and Justice O'Neill-Levy, the only genuine state actor.  Indeed, Plaintiffs have admitted that "Judge O'Neill-Levy was not a participant in the conspiracy to force Judith into a nursing home and keep her there"; rather, the specific conspiracy alleged is that "Ruotolo and Judge O'Neill-Levy conspired to have Ruotolo appointed Judith's guardian."  *Brook II*, Doc. 44 at 10.  And Plaintiffs' primary factual allegation underlying the assertion of Ruotolo and Justice O'Neill-Levy's conspiracy is merely that Justice O'Neill-Levy has appointed Ruotolo as a guardian 21 times, and attorneys who are often appointed as guardians have a "financial motive to conspire with [Justice O'Neill-Levy] and work together to enrich themselves at the expense of alleged incapacitated persons and their families in guardianship litigation."  *Brook I* Compl. ¶¶ 132, 134.  But such a conclusory allegation is insufficient to show a meeting of the minds, nor do the complaints provide any details as to the time or place of any agreement between Justice O'Neill-Levy and Ruotolo.  *See Catania*, 2023 U.S. Dist. LEXIS 73772, at *9–10 (citing *Romer*, 119 F. Supp. 2d at 363); *Quirk*, 582 F. Supp. 3d at 115 (citing *Ortiz*, 2020 WL 2614771, at *6).  Rather, these are mere conclusory allegations insufficient to state a

§ 1983 claim.  *See Browdy*, 131 F. App'x at 753 (quoting *Ciambriello*, 292 F.3d at 324); *Sasscer*, 2008 WL 5215466, at *6 (citing *Gyadu*, 197 F.3d at 591).  As Plaintiffs have now conceded that no conspiracy existed between Justice O'Neill-Levy and any other defendant, and their arguments that the other defendants conspired only with Ruotolo are unavailing since he is not a state actor, Plaintiffs have therefore failed to establish that *any* defendant in either action under color of state law, no matter how egregious their conduct is alleged to be.  Plaintiffs continued exclamations to the contrary throughout the complaints that they are the victims of an elaborate conspiracy does not change the result: repeating it does not make it so.  Accordingly, Plaintiffs cannot state a claim under § 1983 with respect to any defendant, and no federal cause of action therefore exists in this case. The Court therefore does not have federal question subject matter jurisdiction.

As to the remaining state claims, the Court generally has discretion to exercise supplemental jurisdiction over state law claims arising from the same common nucleus of operative fact as the federal claims.  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  But, where no proper basis first exists for original federal jurisdiction over at least one claim, the Court cannot exercise supplemental jurisdiction.  *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 730 (2d Cir. 1993).  Consequently, where as here, no original federal subject matter jurisdiction exists, the Court may not exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See Grazette v. City of N.Y.*, 20-cv-965 (ER) (SLC), 2022 U.S. Dist. LEXIS 206566, at *19 (S.D.N.Y. Nov. 14, 2022) (holding no supplemental jurisdiction exists where federal question jurisdiction was improper and collecting cases), *R&R adopted by* 2023 U.S. Dist. LEXIS 39004 (S.D.N.Y. Mar. 8, 2023).

**B.  Adam Has Abandoned His Argument that the Court Has Diversity Jurisdiction**

Moreover, diversity subject matter jurisdiction cannot save Plaintiffs' claims. Plaintiffs did not argue the Court has diversity subject matter jurisdiction in *Brook II*, wherein the Estate is a plaintiff, only in *Brook I*, in which the sole plaintiff is Adam in his individual capacity and as a personal representative of the Estate.  *Compare Brooks I* Compl. ¶¶ 53–56, *with Brooks II* Compl. ¶¶ 47–49.  In *Brooks I*, Adam alleged complete diversity exists because he is a citizen of Florida, and all defendants are citizens of New York or New Jersey for purposes of subject matter jurisdiction.  *Brooks I* Compl. ¶¶ 26–51, 55.  But the *Brook I* Defendants' joint motion to dismiss argued that complete diversity cannot exist because, as representative of the Estate, Adam's citizenship is in New York, where Judith lived at the time of her death.  *Brooks I*, Doc. 104 at 14–15.  In opposition, Adam argued that the *Brook I* Defendants' "argument is without merit [because] the Complaint's well-pleaded factual allegations set forth a federal question granting this Court subject matter jurisdiction pursuant to 28 U.S.C. § 1331."  *Brooks I*, Doc. 124 at 11.

A "party's failure to address [a] claim raised in [an] adversary's papers may indicate abandonment."  *Hanig v. Yorktown Cent. School Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) (citing *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 828 F. Supp. 1114, 1129 (S.D.N.Y. 1993).  Accordingly, where a plaintiff fails to respond to defendants' arguments in support of their motion to dismiss, courts will deem the underlying claim or argument dismissed.  *See, e.g., Bright-Asante v. Saks & Co.*, 242 F. Supp. 3d 229, 238 (S.D.N.Y. 2017); *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 642–43 (S.D.N.Y. 2008).  Here, Adam's opposition responds to Defendants' arguments as to the non-existence of diversity jurisdiction solely by arguing that federal question jurisdiction exists.  *See Brook I*, Doc. 124 at 11.  In other words, even though he bears the burden of establishing subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113, he makes no arguments in

support of the existence of diversity jurisdiction.  Accordingly, the Court finds that Adam abandoned his arguments that it has diversity subject matter jurisdiction in light of the *Brook I* Defendants' arguments.  *See, e.g., Bright-Asante*, 242 F. Supp. 3d at 238; *Arma*, 591 F. Supp. 2d at 642–43.

Consequently, this Court does not have subject matter jurisdiction under either federal question or diversity jurisdiction, and it must dismiss *Brook I* and *Brook II*.

### C.  The Court Need Not Decide Parties' Remaining Arguments as to Abstention, Immunity, Rule 12(b)(6), and Disqualification

The Court need not reach the arguments concerning *Rooker-Feldman* abstention or defendants' immunities because it has already held that it lacks either diversity or federal question subject matter jurisdiction.  It also therefore may not consider any arguments under Rule 12(b)(6), and Adam's motion to disqualify is rendered moot.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are GRANTED, and Plaintiff Adam Brook's motion to disqualify is DENIED as moot.  The Clerk of Court is respectfully directed to terminate the motions—*Brook I* (22-cv-6173), Docs. 89, 90, 93, 95, 98, 100, 103, 106; and *Brook II* (23-cv-1319), Docs. 36, 39—and close both cases.

It is SO ORDERED.

Dated:   August 21, 2023
         New York, New York

_____
         EDGARDO RAMOS, U.S.D.J.